UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERT PETE VEENSTRA III, MIGUEL CHARLES JOYNER, JEFFREY BOYD ASH, and WILLIAM JERMAINE FLETCHER, | Case No. 1:15-cv-00270-EJL |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| IDAHO STATE BOARD OF CORRECTION, et al., | |
| Defendants. | |

Plaintiffs, two of whom are prisoners in the custody of the Idaho Department of Correction ("IDOC"), are proceeding pro se and in forma pauperis in this civil rights action. Now pending before the Court are Defendants' (1) Motion to Dismiss Plaintiff Ash's Claims as Moot and (2) Motion to Dismiss for Failure to State a Claim. (Dkt. 59, 62.) The Court has notified the parties that it intends to treat these motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Dkt. 69.) Plaintiffs have not responded to the motions, despite having received extensions of time to do so.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order granting Defendants' motions for summary judgment.

## PROCEDURAL BACKGROUND

Plaintiffs filed the instant action in July 2015. (Dkt. 2.) The Court screened the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A and determined that it appeared to state plausible due process and equal protection claims, against some Defendants, based on the IDOC's policy of not allowing inmates in most Idaho prisons to keep or have access to their prison medical records. (Dkt. 15.) The Court noted that, given the strict legal standards of such claims, Plaintiffs' claims faced an uphill battle. Nonetheless, the Court determined that it was possible, though unlikely, that Plaintiffs could establish that they possessed a liberty interest in accessing their medical records or that the denial of access to those records lacked a rational relationship to a legitimate governmental interest. (*Id.* at 6, 8.) The Court denied Plaintiffs' request for appointment of counsel. (*Id.* at 15.) The Court later granted Plaintiffs' request for reconsideration, which allowed them to proceed against three additional Defendants. (Dkt. 19.)

Plaintiffs renewed their request for counsel. (Dkt. 27.) After considering the issue, the Court conditionally granted Plaintiffs' request. (Dkt. 43.) The Court advised Plaintiffs' that it had

> no authority to require attorneys to represent indigent litigants
> in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist.*

> *Court for Southern Dist. of Iowa*, 490 U.S. 296, 298 (1989).
> Rather, when a Court "appoints" an attorney, it can only do so
> if the attorney voluntarily accepts the assignment. *Id*. The
> Court has no funds to pay for attorney's fees in civil matters,
> such as this one, and it is often difficult to find attorneys
> willing to work on a case without payment. For these reasons,
> Plaintiffs should continue to attempt to obtain their own
> counsel on a contingency or other basis, if at all possible. *If
> the Court is unable to locate pro bono counsel, and if
> Plaintiffs are unable to find their own counsel, then Plaintiffs
> will have to continue to litigate this case pro se*.

(*Id*. at 3-4 (emphasis added).)

Court staff immediately set about attempting to find an attorney who would agree
to represent Plaintiffs pro bono. Court staff engaged in ongoing communication with the
Court's Pro Bono Liaison, Mary Hobson, regarding this case. Ms. Hobson contacted
numerous attorneys about this case, but unfortunately was unable to find an attorney to
agree to the representation.

Accordingly, in November 2016, the Court informed Plaintiffs that all attorneys
who were contacted had "declined to accept this case pro bono."[1] (Dkt. 47 at 2.) The
Court determined that because Plaintiffs' likelihood of success was not substantial, it was
"improbable that the Court will succeed in finding pro bono counsel for Plaintiffs in the
near future." (*Id*.) The Court concluded,

> [A]lthough the Court will continue its search for pro bono
> counsel to represent Plaintiffs, the Court has determined that
> this case must move forward in its current state, and *Plaintiffs
> will be required to litigate their case without counsel at this
> time*. Should the Court's continuing efforts to find pro bono

---

[1] The Court erroneously stated that Court staff had contacted the attorneys. However, as noted
above, the Pro Bono Liaison was actually the person who contacted those attorneys.

**MEMORANDUM DECISION AND ORDER - 3**

counsel later prove fruitful, that counsel may move to amend
the complaint and to reopen discovery, if necessary.

(*Id.* (emphasis added).) The Court amended the pretrial schedule to permit Plaintiffs

additional time to prepare their case. (*Id.*)

Plaintiffs then filed a Motion to Appoint Assistance by University of Idaho Law

School and Motion to Suspend Scheduling Order. (Dkt. 49.) The Court denied this

motion, stating that it had "reached out to the pro bono program at the University of

Idaho College of Law, as well as Concordia University School of Law," but that both law

schools declined representation. (Dkt. 50 at 1-2.) The Court reminded Plaintiffs that they

would "be required to litigate their case pro se at this time" and that the Court would

continue its efforts to find counsel willing to take the case. (*Id.* at 2.)

Plaintiffs then filed a Motion for the Court to Exercise Its Inherent Authority and

Compel an Officer of the Court, an Attorney, to Represent Plaintiffs and Motion to

Suspend Scheduling Order. (Dkt. 54.) Plaintiffs contended that, under *Naranjo v.

Thompson*, a case issued by the Fifth Circuit, they were entitled to a Court order

compelling an attorney to represent Plaintiffs without payment. *See Naranjo*, 809 F.3d

793 (5th Cir. 2015).

The Court considered *Naranjo* and found it unpersuasive. (Dkt. 57 at 3.) The

Court first disagreed with *Naranjo*'s reasoning and concluded that federal courts do not

have the inherent authority to compel an attorney to provide pro bono representation in a

civil case. (*Id.* at 4.) The Court next concluded that, even if it did have such authority, it

would decline to exercise that authority in the instant case. (*Id.*)

Originally, the Court thought an attorney might find it an appealing intellectual challenge to brief the interesting questions in the case, even though the claims faced "an uphill battle." (Dkt. 15 at 8.) However, attorneys are busy with career, pro bono, and family commitments, and practicing law is how they must make a living. It is important to use the scarce resources of pro bono counsel on cases that are potentially meritorious. Having reviewed this case several times to assess its merit, the Court again declines to assert its authority or influence to compel an attorney to represent Plaintiffs.

At one point, frustrated that the Court could not find an attorney, Plaintiffs petitioned the Ninth Circuit Court of Appeals for a writ of mandamus, asking that court "to determine whether or not the district court of Idaho has the inherent authority to compel an attorney to represent Petitioners." (Dkt. 58-1 at 2.) The Ninth Circuit denied the petition. (Dkt. 68.)

Meanwhile, Defendants filed their two motions to dismiss. (Dkt. 59, 62.) Plaintiffs sought an extension of time to respond to the first motion, that regarding Plaintiff Ash, but did not ask for a similar extension with respect to the second motion. (Dkt. 66.) Nonetheless, the Court granted Plaintiffs extensions of time to respond to both motions. Specifically, the Court notified the parties it would treat the motions to dismiss as motions for summary judgment and gave Plaintiffs until September 18, 2017, to respond to the motions. (Dkt. 69 at 4-5.) Because of the length of time the case has been pending—over two years—the Court noted that it would grant a further extension of time only in extraordinary circumstances. (*Id*. at 5.)

Plaintiffs did not respond to either motion, nor did they move for an extension of time based on extraordinary circumstances. Therefore, the motions are ripe for consideration by the Court.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### 1.    Plaintiffs' Lack of Response to the Motions

The Court can only guess at the reason why Plaintiffs did not file a response to either of Defendants' motions, but perhaps it was because Plaintiffs still believe they are entitled to the appointment of pro bono counsel. The Court has explained its reasoning behind its decision that it could not, and would not, order an attorney to work on this case without payment. (*See* Dkt. 69.)

The Court understands Plaintiffs' predicament. They are not lawyers, and they likely feel that they are at a disadvantage when pitted against Defendants' counsel.[2] However, such is the case in virtually all pro se cases. The Court knows that Plaintiffs do not have legal training or substantial legal resources, and the Court has independently reviewed the case citations and references provided by Defendants for accuracy and applicability. The Court has also done its own research to determine whether other cases not cited by Defendants apply. In short, the Court has done all it can to level the playing field.

---

[2]    The Court notes that, although Plaintiff Veenstra has no formal legal training, he is an active litigator in this Court and was a class representative in *Balla v. IDOC et al.*, Case No. 1:81-cv-01165-BLW—the case relied on by Plaintiffs for purposes of their equal protection claims, which will be discussed further below—for approximately two and a half years. As a result, the Court finds that Plaintiff Veenstra has relatively substantial litigation experience compared to other pro se litigants.

It is unfortunate that the Pro Bono Liaison could not find an attorney willing to take this case, but the Court was very clear with Plaintiffs that, because of the inability to obtain counsel, they would have to participate in this litigation for themselves. Their failure to respond to Defendants' motions, therefore, must be laid at their own feet.

**2.      Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P. 56(c)(2).[3] Affidavits or declarations submitted in support of or in opposition to a motion

---

[3]     In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

"must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

### 3.     Undisputed Facts

In a separate class action case in this Court known as the *Balla* case, the IDOC entered into a settlement agreement with the plaintiff class as to various injunctions in place at the Idaho State Correctional Institution ("ISCI"). Part of this settlement provides ISCI inmates with a right to review their own medical files. (Compl., Dkt. 2, at 2; *see also Balla v. IDOC et al.*, Case No. 1:81-cv-01165-BLW.) This agreement is an exception to official IDOC policy, which states that "[a]n offender does not have the right

to review his medical file." (Ex. A to Affidavit of Kristina M. Schindele ("Schindele Aff."), Dkt. 64-1 at 5.)

Plaintiffs are current or former Idaho state prisoners who, at one point, were incarcerated at ISCI. Because of the settlement agreement in *Balla*, Plaintiffs had the ability to review their medical records while housed at ISCI. (Compl. at 2.) Currently, Plaintiffs Veenstra, Joyner, and Fletcher are incarcerated at Idaho prisons other than ISCI; Plaintiff Ash is no longer incarcerated, having been released on parole in November 2015 and discharged from parole in November 2016. (*Id.*; Dkt. 60 at ¶ 3.) Once Plaintiffs were transferred out of ISCI, they no longer were able to view their medical files pursuant to the *Balla* settlement—which applies only to ISCI.

Plaintiffs filed the instant Complaint in July 2015, alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment arising from Defendants' denial of their requests to view their medical records at facilities other than ISCI. (Compl. at 2; Initial Review Order, Dkt. 15, at 5-8.) Plaintiffs seek declaratory and injunctive relief.

4.    **Discussion**

   A.    ***Plaintiff Ash's Claims Are Moot***

Defendants have submitted evidence that Plaintiff Ash is no longer in the custody of the IDOC. Plaintiffs did not respond to Defendants' motion to dismiss or otherwise controvert Defendants' evidence, and, therefore, Plaintiff Ash's release from custody is undisputed. *See* Fed. R. Civ. P. 56(e)(2).

Because Plaintiff Ash is no longer in IDOC custody, and therefore has no reasonable expectation of being subjected to the IDOC's medical-records policy, his claims for injunctive relief are moot. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) ("Johnson was transferred to a federal correctional facility in Washington. Because he has demonstrated no reasonable expectation of returning to [his previous correctional facility], his claims for injunctive relief relating to [that facility's] policies are moot."). Further, Plaintiff Ash's claims for declaratory relief are subject to dismissal because the Eleventh Amendment prohibits a court from issuing a "judgment[] against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Therefore, Defendants are entitled to summary judgment on Plaintiff Ash's claims.

### B. *Defendants Are Entitled to Summary Judgment on All Claims of All Plaintiffs*

#### i. Due Process Claims

Plaintiffs claim that the denial of their requests to view their medical records at prisons other than ISCI violates due process.

The Due Process Clause of the Fourteenth Amendment prohibits government action that "deprive[s] any person of life, liberty, or property. without due process of law." U.S. Const., amend. XIV. A plaintiff cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989).

The Due Process Clause protects two distinct but related rights. The right to *procedural* due process prohibits the government from depriving an individual of a liberty or property interest without following the proper procedures for doing so. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). The right to *substantive* due process protects individuals from being deprived of a liberty or property interest notwithstanding the procedures followed. *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). A substantive due process violation is one which "shocks the conscience." *Wood v. Ostrander*, 879 F.2d 583, 591 n.8 (9th Cir. 1989).

Because liberty interests are "generally limited to freedom from restraint"—a freedom that is necessarily curtailed by a sentence of incarceration—a prisoner possesses a liberty interest under the federal Constitution only when he or she is subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In addition to liberty interests arising in this circumstance, a State may create a liberty interest by passing a statute or administrative rule that "contains mandatory language and imposes substantive limitations on the discretion of those" making the challenged decision or otherwise taking the challenged government action. *Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010).

For purposes of procedural due process, if a prisoner possesses a protectable liberty interest, then a court must consider the process to which the prisoner is due. This determination must be made on a case-by-case basis. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given

set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (internal quotation marks and alteration omitted). Therefore, if Plaintiffs have a liberty interest in viewing their own medical records, then IDOC's decision to not allow prisoners (other than those at ISCI pursuant to the *Balla* settlement) to access their records would have to be accompanied by sufficient process.

For purposes of substantive due process, if Plaintiffs have such a liberty interest and can show that being deprived of that interest is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," then it would not matter how much process accompanied the IDOC's decision. In such a case, the IDOC's decision would constitute a substantive due process violation. *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1484 (9th Cir. 1989) (internal quotation marks omitted).

There is no constitutional right or liberty interest in being housed in a particular unit in prison or a particular prison facility. *See Meachum v. Fano*, 427 U.S. 215, 218 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections . . . ."); *McCune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). Therefore, Plaintiffs do not have a liberty interest simply in remaining at ISCI.

Accordingly, the most important question is whether Plaintiffs have a federal or a state-created liberty interest in being allowed to review their own medical records while incarcerated. For the following reasons, the Court concludes that Plaintiffs do not have such a liberty interest.

The Court has found no authority for the proposition that a prisoner has a liberty interest in accessing his or her medical records. Indeed, the weight of authority holds the opposite: "a prisoner does not have a liberty interest in his medical records or other constitutional right to access such records." *Dunn v. Corr. Corp. of Am.*, No. CV 3:09-087, 2010 WL 2817264, at *3 (S.D. Ga. June 15, 2010) (unpublished) (collecting cases), *report and recommendation adopted sub nom. Dunn v. Rodriguez*, No. CV 3:09-087, 2010 WL 2817267 (S.D. Ga. July 15, 2010); *see also Blanton v. Blue*, No. 4:16CV-P10-JHM, 2016 WL 2858922, at *3 (W.D. Ky. May 16, 2016) (unpublished) ("[A] prisoner has no constitutional right to review or obtain copies of his prison medical records."); *Martikean v. United States*, No. 3:11-CV-1774-M-BH, 2012 WL 1986919, at *4 (N.D. Tex. Apr. 6, 2012) (unpublished) ("[T]here is no constitutional requirement that an inmate be given the right to review or obtain his prison medical records.") (emphasis omitted), *report and recommendation adopted*, No. 3:11-CV-1774-M-BH, 2012 WL 1992111 (N.D. Tex. June 4, 2012).

While these are not cases of precedent, the Court agrees with the decisions of these other courts. The denial of access to one's medical records while incarcerated is not the type of atypical and significant hardship, in relation to the ordinary incidents of prison

life, that creates a liberty interest under the federal Constitution. *See Sandin*, 515 U.S. at 484. Plaintiffs do not allege that they are prohibited from discussing their medical history with medical providers, from seeking medical treatment, or from writing their own notes about conversations with their medical providers. Plaintiffs generally are prohibited only from keeping medical documents with them or from accessing those documents. Furthermore, the IDOC's policy of not allowing prisoners to access their medical records is not absolute. The policy allows for medical records to be released to the prisoner pursuant to a court order when a prisoner demonstrates a need for the records.[4] (Ex. A to Schindele Aff. at 4-5.) Indeed, prisoners regularly *do* obtain copies of their medical records through discovery in civil rights litigation in this Court.

Having concluded that the federal Constitution does not grant a prisoner a liberty interest in accessing his or her medical records, the Court must now consider whether the State of Idaho has created such an interest. The Court determines that it has not.

Idaho state law does not guarantee an inmate the right to access his or her medical records. Although Idaho's Public Records Act grants a person the right to "inspect and copy the records of a public agency or independent public body corporate and politic pertaining to that person," that right "does not include the right to review . . . [r]ecords of a prisoner maintained by the state or local agency having custody of the prisoner or by

---

[4] Medical records can also be released (1) to the prisoner's attorney upon the attorney's request and with consent from the prisoner, (2) to the prisoner's outside physician upon the physician's request and with consent from the prisoner, (3) to another state agency upon transfer of the prisoner, and (4) to "IDOC staff on a need to know basis – i.e.: Problem lists to those (social workers) responsible for parole plan preparation." (Ex. A. to Schindele Aff. at 4.)

the commission of pardons and parole." Idaho Code § 74-113(1), (3)(e). Further, the

IDOC's agreement in *Balla* to provide a limited right of review to inmates at ISCI does

not create a liberty interest for non-ISCI inmates in having access to their medical records

at prisons other than ISCI.

Neither is there any case law concluding that a right to view one's personal

medical records is a fundamental substantive right emanating from the Fourteenth

Amendment. To the contrary, most cases involving medical records are focused on the

right not to have one's personal medical records disclosed to third parties. *See, e.g.,*

*Whalen v. Roe*, 429 U.S. 589 (1977); *Jarvis v. Wellman*, 52 F.3d 125 (6th Cir. 1995).

For the foregoing reasons, Plaintiffs do not have a liberty interest in reviewing

their own medical records while incarcerated, nor is there any fundamental right to do so,

and Defendants are entitled to summary judgment on Plaintiffs' due process claims.

       ii.      <u>Equal Protection Claims</u>

Plaintiffs also argue that the denial of access to their medical files violates their

right to equal protection.

The Fourteenth Amendment prohibits the government from depriving an

individual of the equal protection of the law. The purpose of the Equal Protection Clause

"is to secure every person within the State's jurisdiction against intentional and arbitrary

discrimination, whether occasioned by express terms of a statute or by its improper

execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S.

562, 564 (2000) (internal quotation marks omitted). Equal protection claims alleging

disparate treatment or classifications are subject to a heightened standard of scrutiny

when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 440 (1985).

Because Plaintiffs do not contend that IDOC's medical-records policy (or the decision to allow ISCI inmates, but not other inmates, from reviewing their medical records) is based on Plaintiffs' membership in a suspect or quasi-suspect class, and because—as explained above—there is no fundamental constitutional right to review one's medical records in prison, Plaintiffs' equal protection claims are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). Under the rational basis test, the relevant inquiry is whether the state action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987); *see also Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, . . . even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are 'reasonably related to legitimate penological interests.'") (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

An inmate can prevail under rational-basis review only if (1) the inmate is similarly situated with inmates who are treated differently by the state, and (2) the state has no rational basis for the dissimilar treatment. "[E]ven where similarly-situated persons are treated differently by the state, state action is presumed constitutional and

will not be set aside if any set of facts reasonably may be conceived to justify it." *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (internal quotation marks omitted). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *Id*. at 272.

It is undisputed that the reason ISCI inmates may review their medical records, as an exception to official policy, is because the IDOC entered into a settlement agreement with ISCI inmates in a case involving prison conditions at ISCI. The temporary decision to settle the *Balla* case in this manner is eminently reasonable, and there is no evidence that IDOC officials acted with any sort of discriminatory motive when entering into the settlement agreement.[5] Therefore, Defendants are entitled to summary judgment on Plaintiffs' equal protection claims.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, treated as motions for summary judgment, will be granted.

## ORDER

**IT IS ORDERED:**

1.    Defendants' Motion to Dismiss Plaintiff Ash's Claims as Moot, construed as a motion for summary judgment (Dkt. 59) is GRANTED.

2.    Defendants' Motion to Dismiss for Failure to State a Claim, construed as a motion for summary judgment (Dkt. 62) is GRANTED.

---

[5]        The Court has no information as to whether the policy exception at ISCI will continue if the *Balla* injunctions are terminated at some point in the future.

3.    Judgment will be entered in favor of Defendants, and this entire action will

be dismissed with prejudice.

DATED: October 24, 2017

Edward J. Lodge
United States District Judge